**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Thomas Bradley,<br><br>          Plaintiff,<br><br>vs.<br><br>Lori Bradley, et al.,<br><br>          Defendants. | No. CV-22-01435-PHX-SPL<br><br>**ORDER** |

Before the Court are three Motions to Dismiss, filed by four of the eight named Defendants in this matter:

    1. Phoenix Police Department's and Jasquin Gibson's Motion to Dismiss for Failure to State a Claim (Doc. 31)

    2. Tracey Westerhausen's Motion to Dismiss for Lack of Jurisdiction (Doc. 37)

    3. Maricopa County's Motion to Dismiss for Failure to State a Claim (Doc. 47)

All three Motions have been fully briefed and are ready for review.[1] For the reasons that follow, the Court will grant the Motions.

---

[1] *See* Doc. 41 (Plaintiff's Response to Defendants Phoenix Police Department's and Jasquin Gibson's Motion); Doc. 48 (Defendants Phoenix Police Department's and Jasquin Gibson's Reply to Plaintiff's Response); Doc. 43 (Plaintiff's Response to Defendant Westerhausen's Motion); Doc. 50 (Defendant Westerhausen's Reply to Plaintiff's Response); Doc. 58 (Plaintiff's Response to Defendant Maricopa County's Motion); and Doc. 60 (Defendant Maricopa County's Reply to Plaintiff's Response).

## I. **BACKGROUND**

On August 24, 2022, Plaintiff Scott Thomas Bradley ("Plaintiff") filed this action against eight named Defendants: Lori Bradley, Tracey Westerhausen, Jasquin Gibson, State of Arizona, County of Maricopa, Superior Court of Arizona, Arizona Department of Economic Security, and Phoenix Police Department ("PHXPD"). (Doc. 1). According to the Complaint, Plaintiff and Defendant Bradley were married on September 8, 2014. (*Id.* at 11). In 2016, the couple's daughter, J.B., was born. (*Id.*). At some point after that, Plaintiff and Defendant Bradley divorced; after the dissolution of their marriage, they "entered into a Parenting Consent Agreement of shared/joint custody and legal decision-making to both Father and Mother." (*Id.*). Although it appears that Plaintiff and Defendant Bradley may have complied with the custody arrangement for a time, Plaintiff alleges that at some point they "mutually agreed NOT to follow the original parenting time arrangement in the original consent agreement" and agreed to share custody of their daughter according to their own terms. (*Id.* at 12). On January 31, 2022, Defendant Bradley apparently filed a "Petition to Modify Child Support" with the Maricopa County Superior Court, requesting an increase in her monthly child support payment from Plaintiff. (*Id.* at 12–13). Defendant Bradley's Petition appears to be the start of the child custody and child support dispute that is at the center of this action.

Plaintiff alleges that the child support arrangement he has with Defendant Bradley is a "forced obligation and extortion of [his] labor wages" in violation of his federal and state constitutional rights. (*Id.* at 15). Plaintiff seeks "injunctive relief from the wrongdoers' ongoing attempts to subject [him] to an unconscionable contract of adhesion" and requests that Defendant Bradley be enjoined from "pursu[ing] fraud for her own fiscal gain." (*Id.*). Plaintiff also requests "immediate restoration of my property with compensatory damages." (*Id.*). As to their custody dispute, Plaintiff alleges that Defendant Bradley has "willfully, intentionally engaged in a deliberate plan to keep [their] daughter from her lawful and equitable time with [Plaintiff], including emotional and psychological abuse on [their] daughter and [on Plaintiff] by employing various methods and tactics to do so." (*Id.*

at 21). Specifically, Plaintiff alleges that Defendant Bradley has kept Plaintiff away from his daughter despite his numerous attempts to see her. (*Id.* at 21–25). Such attempts have included direct contact with Defendant Bradley, the filing of petitions and other requests with the Superior Court, and the filing of police reports. (*Id.* at 21–26). Plaintiff alleges that Defendants have taken Defendant Bradley's side and conspired to keep Plaintiff from his daughter and to enforce the child support contract against Plaintiff. (*Id.*).

Near the end of the Complaint, Plaintiff states "[i]n addition to the torts and trespasses claimed herein, the crimes that have been and are being committed against me by [Defendants] are too many to list, including but not limited to": fraud; constructive/legal fraud; actionable fraud/material fraud/fraud in the inducement; deceit/fraudulent acts/fraudulent misrepresentation/fraudulent concealment/equitable fraud/fraud by deception; conspiracy against rights (18 USC 241) and deprivation of rights under color of law (18 USC 242); racketeering; conspiracy; kidnapping; duress and coercion; material/fraudulent/negligent misrepresentation; corruption/judicial corruption/breach of fiduciary trust; and human rights denied. (*Id.* at 32–33). At bottom, Plaintiff requests "the immediate return and restoration of [his] property with sole custody and legal decision-making be ordered to me to administer equitable parenting time for my daughter with both her father and [Defendant] Bradley, with just compensation for the damages caused by Tracey Westerhausen, [Defendant] Bradley, Jasquin Gibson, and the STATE OF ARIZONA, et[ ]al." (*Id.* at 33).

## II.   <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that

allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

### III.   DISCUSSION

The Court will address each of the three pending Motions to Dismiss in turn.

### A. Defendants PHXPD's and Jasquin Gibson's Motion to Dismiss

Plaintiff alleges that Officer Jasquin Gibson ("Officer Gibson"), a PHXPD detective, "has committed misprision of felony, having personal knowledge of felony crimes being committed against [him], and failing to immediately make known or report them, failing to prevent deprivation of [his] sacred liberty, property and parenting rights as a father, instead concealing them under color of law," in violation of A.R.S. § 13-1302(C)(2). (Doc. 1 at 4). Plaintiff alleges that Officer Gibson breached his duties as an officer "by covering up crimes against [Plaintiff] under color of law." (*Id.* at 9). Specifically, Plaintiff alleges that he reported the ongoing interference with his parenting time to PHXPD, and that his reports were assigned to Officer Gibson "for investigation." (*Id.* at 25). Plaintiff further alleges that, on August 12, 2022, Officer Gibson and Defendant Bradley "had a phone conversation" during which Defendant Bradley "used unsubstantiated lies, fraud, hearsay, to convince [Officer] Gibson her crimes against [Plaintiff] were justified, openly admitting having no evidence of her 'allegations.'" (*Id.* at 25–26). Specifically, Plaintiff alleges that Defendant Bradley told Officer Gibson the following:

>   (i) that Plaintiff "filed to be a sovereign citizen";
>
>   (ii) that she and Plaintiff's daughter "have gone through 'therapy sessions' to figure out why [their] daughter is 'fearful' and does not want to be with [Plaintiff]";
>
>   (iii) that Plaintiff "went to pick up [their] daughter to give [Plaintiff] a hug and [their] daughter told [Plaintiff] 'not to touch her'";

4

>> (iv) that "there is a 'history' in [Plaintiff's] 'family of origin of molestation and a obsession of sex'";
>
>> (v) that she "admitted she has no proof of anything regarding molestation and [Plaintiff] and only her suspicions and she also admitted [their] daughter made no disclosure to her or her therapist";
>
>> (vi) that their daughter "called [Defendant Bradley] and asked to be picked up early from [Plaintiff's] house 'because she had been locked in her bedroom and not allowed to go down to eat until nine o'clock at night'";
>
>> (vii) that her "parental interference was 'not about the child support because if that was the case she would not have allowed [Plaintiff] for the years prior to spend time with her daughter'"; and
>
>> (viii) that Plaintiff has "been eluding service."

(*Id.* at 26). Plaintiff alleges that the incident report of the phone call states: "[Defendant Bradley] understands that she is not following the parenting plan and also understands there is a criminal aspect of that but feels as if she is doing the right thing because she does have a fear for her daughter's safety at this time if she is with [Plaintiff]." (*Id.*). Plaintiff alleges that Officer Gibson "concealed and closed out the investigation of the crimes against me, citing color of law statute of the Arizona Revised Statutes, committing misprision of felony, and factually in conspiracy with [Defendant] Bradley, depriving me of my sacred and constitutionally protected rights (1st, 4th, 5th, 7th, 9th, 10th Amendments) without Due Process and Trial by Jury." (*Id.* at 27). Plaintiff alleges that PHXPD has "a pattern and practice of operating under the color of law, failing to train their employees and officers about the Supreme Law of the Land and natural, constitutionally protected rights." (*Id.*).

Defendants PHXPD and Officer Gibson move for dismissal of Plaintiff's claims against them "because (1) the PHXPD is non-jural entity that cannot be sued; (2) Plaintiff fails to state a claim upon which relief can be granted; (3) qualified immunity applies; (4) the PHXPD is entitled to immunity under A.R.S. § 12-820.05; and (5) punitive damages cannot be awarded against the PHXPD." (Doc. 31 at 2). The Court agrees that PHXPD is not a jural entity that can be sued, and that Plaintiff has not sufficiently stated any claims

against Officer Gibson. Therefore, dismissal is appropriate, and the Court need not address Defendants' other arguments.

As to PHXPD, the Court finds that dismissal is appropriate because, as this Court has previously held, PHXPD is merely an agency of the City of Phoenix and cannot be sued. *See Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 885 (D. Ariz. 2008) (noting that "[n]either the Arizona legislature nor the City [of Phoenix] has stated that the Police Department is a separate jural entity" and holding that "[c]onsistent with its previous decision in *Wilson* . . . the Phoenix Police Department is a subpart of the City of Phoenix, not a separate entity for purposes of suit"); *see also Watson-Nance v. City of Phoenix*, No. CV-08-1129-PHX-ROS, 2009 WL 792497, at *9 (D. Ariz. Mar. 24, 2009) (adopting *Gotbaum*'s analysis and finding that "Phoenix Police Department is a municipal agency or an instrumentality, not a political subdivision" and thus it is "an unauthorized Defendant under federal and state law and must be dismissed"); *Machowicz v. Maricopa Cnty.*, No. CV-21-00316-PHX-JJT, 2021 WL 4319206, at *3 (D. Ariz. Sept. 23, 2021) ("[T]he Court concludes that the Phoenix Police Department is a non-jural entity and will dismiss the claims against it.").

As to Officer Gibson, Plaintiff alleges that he committed misprision of felony by having knowledge of alleged felony crimes against Plaintiff and by failing to make those felony crimes known or report them to Plaintiff or to some judge or other person in civil or military authority. (Doc. 1 at 4). Plaintiff alleges that Officer Gibson failed to prevent the deprivation of Plaintiff's "liberty, property and parenting rights . . . [and] instead conceal[ed] them." (*Id.*). Plaintiff also alleges that Officer Gibson was involved in a conspiracy—with the other Defendants—to deprive Plaintiff of his constitutional rights under the first, fourth, fifth, seventh, ninth, and tenth amendments without due process and trial by jury. (*Id.* at 27). Although the Complaint is not entirely clear, Plaintiff may also assert claims against Officer Gibson for intentional infliction of emotional distress and breach of fiduciary duty.

The Court finds that Plaintiff has not plausibly stated any of the above claims against

Officer Gibson. The crime of misprision of felony is provided under 18 U.S.C. § 4, which reads: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both." Critically, § 4 does not provide any private right of action and Plaintiff fails to provide any authority to the contrary. *See Tuck v. McMullen*, No. 19-cv-1505-WQH-RBB, 2020 WL 1849673, at *5–*6 (S.D. Cal. Apr. 13, 2020) (dismissing claim for misprision of felony after finding no private right of action); *Apollo v. Peake*, 306 F. App'x 584, 586–87 (Fed. Cir. 2009) ("We are aware of no authority for the proposition that an alleged violation of the federal misprision of felony statute gives rise to a private right of action."). Thus, Plaintiff's claim for misprision of felony against Officer Gibson must be dismissed.

To the extent Plaintiff may allege that Officer Gibson *herself* deprived Plaintiff of his constitutional rights, the Court finds that qualified immunity applies to preclude such a claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether an officer is entitled to qualified immunity, the Court must consider "(1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 231). The Court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at

hand." *Pearson*, 555 U.S. at 236. Once a qualified-immunity defense is raised, the plaintiff bears the burden of proving the violation of a constitutional right and that the right was clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

Here, qualified immunity applies because Plaintiff has failed to explicitly allege facts that, taken as true, show that Officer Gibson violated a constitutional right of Plaintiff. The only factual allegations pertaining to Officer Gibson relate to his August 12, 2022 phone conversation with Defendant Bradley during which Plaintiff alleges that Defendant Bradley stated a series of "lies, fraud, [and] hearsay" to justify her own crimes against Plaintiff. (*Id.* at 25–26). Plaintiff alleges that Officer Gibson heard these lies and then stated in the incident report that "[Defendant Bradley] understands that she is not following the parenting plan and also understands there is a criminal aspect of that but feels as if she is doing the right thing because she does have a fear for her daughter's safety at this time if she is with [Plaintiff]." (*Id.*). It is entirely unclear to the Court how Officer Gibson violated any of Plaintiff's constitutional rights by conducting and logging the phone conversation in the manner Plaintiff alleges. Even if these facts *did* amount to a constitutional violation, Plaintiff's Response fails to provide any caselaw or other legal authority that would indicate that this right was "clearly established" at the time Officer Gibson conducted the phone call. In other words, the Court cannot find that a reasonable officer in Officer Gibson's place would have known that it was a violation of Plaintiff's constitutional rights to conduct the phone conversation and then record it in the manner that Officer Gibson did.

In the Response, Plaintiff argues that "[s]ince the Superior Law of God has been clearly established since the time of Moses is established as the foundation of all laws of this country and nation state, including our respective Constitutions. The [first, fourth, fifth, seventh, eighth, ninth, and tenth] Amendments to the United States Constitution have been clearly established since December 15[], 1791, therefore [Officer Gibson], cannot plead Qualified Immunity for his conduct." (Doc. 41 at 6). Plaintiff misinterprets the "clearly established" prong of the analysis. "To find a clearly established right, the court must consider the right at issue in a particularized sense, rather than 'as a broad general

proposition.'" *Cruz v. City of Tucson*, No. CV-13-01115-TUC-DCB (LEAD), 2015 WL 11111305, at *3 (D. Ariz. July 14, 2015) (quoting *Dunn v. Castro*, 621 F.3d 1196, 1200–01 (9th Cir. 2010)). "This is because 'the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.'" *Id.* (quoting *Dunn*, 621 F.3d at 1200–01). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Dunn*, 621 F.3d at 1200 (citation omitted) ("[T]he court must 'determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful.").

Here, the Court agrees with Plaintiff that the first, fourth, fifth, seventh, eighth, ninth, and tenth Amendments were "clearly established" at the time of Officer Gibson's alleged conduct insofar as Plaintiff is asserting that those amendments—and their constitutional guarantees—were in existence on August 12, 2022. But that is not the issue; rather, the question is whether it would have been clear to a reasonable officer in Officer Gibson's place that his conduct violated one of those constitutional guarantees in the situation he confronted. Plaintiff has failed to demonstrate this with any meaningful support. Thus, even *assuming* that Plaintiff properly asserted constitutional violations against Officer Gibson—which he did not—such allegations would be barred by qualified immunity. The Court must dismiss Plaintiff's claims for alleged constitutional violations by Officer Gibson.

Turning to Plaintiff's claim for conspiracy, the Court finds that Plaintiff has failed to state a claim for conspiracy to interfere with civil rights. To state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of

a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United Brotherhood of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). Plaintiff's Complaint contains nothing but conclusory facts and fails to allege any facts that, taken as true, plausibly establish *any* of these four elements. Rather, the only facts Plaintiff provides related to Officer Gibson pertain to the August 12, 2022 phone conversation he had with Defendant Bradley. As discussed above, the facts alleged related to that phone conversation do not show that Officer Gibson entered into a conspiracy with Defendant Bradley or with any of the other Defendants in this matter. Thus, Plaintiff's claim for conspiracy to deprive him of civil rights must be dismissed.

Finally, Plaintiff appears to make claims for intentional infliction of emotional distress and breach of fiduciary duty against Officer Gibson. However, Plaintiff does not allege any facts that would plausibly establish the elements for either claim. For example, Plaintiff does not plead that Officer Gibson engaged in any sort of action that could be considered "extreme" or "outrageous." *See Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562 (1969) (defining extreme and outrageous conduct as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community"). Moreover, Plaintiff does not specify what fiduciary duty Officer Gibson owed to Plaintiff during his phone conversation with Defendant Bradley, let alone how his conduct in listening to Defendant Bradley and then making a written documentation of that conversation breached such a duty. All told, Plaintiff has failed to plausibly state any viable claim against Officer Gibson, and Officer Gibson's Motion to Dismiss must be granted.

**B. Defendant Westerhausen's Motion to Dismiss**

Plaintiff alleges that Defendant Westerhausen—a Maricopa County Superior Court Judge who apparently presided over Plaintiff's and Defendant Bradley's child custody and child support dispute—was or is involved in a "conspiracy under color of law" with Defendant Bradley and Officer Gibson. Plaintiff alleges that, together, these individuals conspired to "do[] wrong and evil against him." (Doc. 1 at 2). Plaintiff alleges numerous

claims against Defendant Westerhausen under both state and federal law. Defendant Westerhausen argues that the claims "involve judicial acts that were within her subject matter jurisdiction and are covered by judicial immunity." (Doc. 37 at 1). The Court agrees.

"Judges and those performing judge-like functions are absolutely immune from *damage* liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (emphasis added) (citing *Richardson v. Koshiba*, 693 F.2d 911, 913 (9th Cir. 1982)). "Immunity does not extend, however, to actions for prospective *injunctive* relief." *Id.* (emphasis added) (citing *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1985); *Richardson*, 693 F. 2d at 913, n.8). "Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts." *Id.* (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193 (1985)).

"The immunity afforded judges . . . is not absolute." *Id.* "A judge lacks immunity where he acts in the 'clear absence of all jurisdiction' . . . or performs an act that is not 'judicial' in nature." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)). "The factors relevant in determining whether an act is judicial 'relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.* (citing *Stump*, 435 U.S. at 362). "To determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction." *Id.* (listing cases). "Where not clearly lacking subject matter jurisdiction, a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party." *Id.* (citations omitted). "Jurisdiction should be broadly construed to effectuate the policies supporting immunity." *Id.*

Here, the Court finds that Defendant Westerhausen's alleged conduct was judicial in nature and within her jurisdiction; thus, judicial immunity applies to bar Plaintiff's claims for damages against Defendant Westerhausen. Plaintiff alleges that the decisions

and orders made by Defendant Westerhausen during the pendency of Plaintiff's custody dispute with Defendant Bradley—specifically those decisions and orders relating to Defendant Bradley's petition to modify child custody and child support—violated Plaintiff's constitutional rights. However, Plaintiff points to no decision or order that was not judicial in nature or otherwise not within Defendant Westerhausen's jurisdiction as a judge overseeing a family law case. The Court agrees with Defendant Westerhausen that any judicial decisions related to the adequacy of a petition to modify child custody and child support, the timeliness of a motion for summary judgment motion, and whether a party has waived any defenses are *clearly* judicial in nature and fall within the scope of judicial immunity. Given that Plaintiff alleges no actions by Defendant Westerhausen that were beyond the scope of her judicial duties, the Court finds that immunity applies, and Plaintiff's claims must be dismissed to the extent Plaintiff seeks damages.

Although judicial immunity does not bar Plaintiff's claims to the extent Plaintiff seeks *injunctive* relief, the Court nonetheless finds that injunctive relief against Defendant Westerhausen is inappropriate as a matter of law, for numerous reasons. First, 42 U.S.C. § 1983—under which Plaintiff brings several of his claims—specifically states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." As noted above, any alleged acts or omissions by Defendant Westerhausen were expressly taken in her judicial capacity. Moreover, Plaintiff's Complaint makes no mention of a declaratory decree being violated or declaratory relief being unavailable. Thus, § 1983 precludes any injunctive relief against Defendant Westerhausen.

Even aside from § 1983, injunctive relief is also barred against Defendant Westerhausen's actions under 28 U.S.C. § 2283. Under § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Act's mandate extends not only to

injunctions affecting pending proceedings, but also to injunctions against the execution or enforcement of state judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007) (citing *Atl. Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs*, 398 U.S. 281, 287–88 (1970)). Thus, to the extent Plaintiff seeks injunctive relief that would affect the state court proceedings before Judge Westerhausen or otherwise preclude the execution or enforcement of her judgments, § 2283 precludes such relief.

Even aside from the above statutes, injunctive relief against the Superior Court is barred by the Eleventh Amendment because the Superior Court is a state office. *See Collins v. Corbin*, 160 Ariz. 165, 166 (1989) (recognizing that the Superior Court is "a *state* office"); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (citation omitted) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies.").

In sum, Plaintiff's claims against Defendant Westerhausen must be dismissed. Judicial immunity bars any of Plaintiff's claims that seek damages and injunctive relief is unavailable against Defendant Westerhausen or the actions she took in her capacity as a Superior Court Judge.

**C. Defendant Maricopa County's Motion to Dismiss**

Finally, Defendant Maricopa County contends that Plaintiff's Complaint "does not plead facts against Maricopa County, does not allege that a legal wrong has been committed nor any action by Maricopa County." (Doc. 47 at 3). Having reviewed the Complaint in its entirety, the Court agrees. Plaintiff does not assert any facts or claims against Maricopa County. Plaintiff *does*, however, assert claims against Maricopa County Superior Court Judge Tracey Westerhausen. Plaintiff's Response appears to imply that Maricopa County can be held liable for the actions of Judge Westerhausen or the Superior Court. However, to the extent Plaintiff takes issue with actions taken by the Superior Court or its employees, Maricopa County is not the proper defendant because the judicial department is not under the control of the County. *See Zakrajsek v. Armstrong*, No. CIV-04-0449-PHX-SMM, 2006 WL 120327, at *5 (D. Ariz. Jan. 13, 2006) (citing *Hernandez v. Maricopa Cnty.*, 138

Ariz. 143, 144–45 (Ct. App. 1983)) ("A county superior court and its personnel are independent from a county"). Rather, the Superior Court is "part of the judicial department and thus [is] not under the control of the executive branch of the government." *Hernandez*, 138 Ariz. at 146. "Therefore, the Maricopa County Superior Court and its personnel are not under Maricopa County's control." *Zakrajsek*, 2006 WL 120327, at *5. "Instead, as the Arizona Supreme Court has noted, the superior court is 'a *state* office.'" *Id.* (citing *Collins*, 160 Ariz. at 166) (emphasis in original).

Given that Plaintiff does not allege any independent facts or claims against Maricopa County, and because Maricopa County cannot be held liable for the actions of the Superior Court or its judges or staff members, the Court must grant the County's Motion to Dismiss and dismiss the County from this action.

## IV. CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Here, the Court finds that leave to amend would be futile, given the numerous jurisdictional issues and assertions of immunity discussed above. Thus, the Court denies Plaintiff leave to amend and dismisses Defendants PHXPD, Gibson, Westerhausen, and Maricopa County from this action with prejudice.

According,

**IT IS ORDERED** that Defendants Phoenix Police Department's and Jasquin Gibson's Motion to Dismiss (Doc. 31) is **granted**. Defendants Phoenix Police Department and Jasquin Gibson are **dismissed** from this action **with prejudice**.

///

**IT IS ORDERED** that Defendant Westerhausen's Motion to Dismiss (Doc. 37) is **granted**. Defendant Westerhausen is **dismissed** from this action **with prejudice**.

**IT IS ORDERED** that Defendant Maricopa County's Motion to Dismiss (Doc. 47) is **granted**. Defendant Maricopa County is **dismissed** from this action **with prejudice**.

Dated this 11th day of January, 2023.

Honorable Steven P. Logan
United States District Judge