**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Thomas Bradley,<br><br>           Plaintiff,<br><br>vs.<br><br>Lori Bradley, et al.,<br><br>           Defendants. | No. CV-22-01435-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Scott Thomas Bradley's ("Plaintiff") Motion for Default Judgment (Docs. 54). The Motion seeks an order for entry of default and default judgment against Defendants State of Arizona (the "State"), Arizona Department of Economic Security ("DES"), and Superior Court of Arizona ("Superior Court").[1] (Doc. 54 at 1). This Motion is fully briefed and ready for review. (Docs. 54, 55, 56, 61 & 62).[2] The Court denies Plaintiff's Motion, for the following reasons.[3]

///

---

[1] Plaintiff's Motion also seeks entry of default and default judgment against Defendant Maricopa County. (Doc. 54 at 1). However, Defendant Maricopa County has already been dismissed from this action. (*See* Doc. 67).

[2] Docket numbers 55 and 62 are "Affidavits" filed by Plaintiff in support of his Motion and his Reply brief, respectively.

[3] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle a plaintiff to a default judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB, 2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered, the district court has discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits (collectively, the "*Eitel* factors"). *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## II. DISCUSSION

As an initial matter, Defendants point out that DES and the Superior Court are non-jural entities that lack the capacity to sue or be sued in their own names. Having reviewed Defendants' argument, as well as Plaintiff's responsive argument in his Reply brief, the Court agrees and finds that dismissal of DES and the Superior Court is appropriate.

In Arizona, "[g]overnmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 (Ct. App. 2010) (citing *Schwartz v. Sup. Ct.*, 186 Ariz. 617, 619 (Ct. App. 1996)). "Thus, a governmental entity may be sued only if the legislature has so provided." *Id.* (citing *Kimball v. Shofstall*, 17 Ariz. App. 11, 13 (1972)). As this Court has found on numerous occasions, "[t]he Arizona legislature has not given DES authority to sue or be sued, making DES a non-jural entity." *D'Agostino v. Ariz. Dep't of Econ. Sec.*,

No. CV-21-01292-PHX-SPL, 2022 WL 3682003, at *2, n.4 (D. Ariz. Aug. 25, 2022) ("The Arizona legislature has not given DES authority to sue or be sued, making DES a non-jural entity."); *see also Paz v. Arizona*, No. CV-14-02377-TUC-BPV, 2015 WL 12917572, at *3–4 (D. Ariz. July 6, 2015) (holding that DES was non-jural entity but that the State was proper party). Likewise, the Court has previously found that the Maricopa County Superior Court is also a non-jural entity which cannot be sued. *Petramala v. Arizona*, No. CV-19-00029-PHX-DWL, 2019 WL 11027688, at *4 (D. Ariz. July 18, 2019) (citing *Edwards v. Lakewood Cmty. Ass'n*, No. CV-18-01934-PHX-JJT, 2018 WL 4953263, at *1 (D. Ariz. Oct. 12, 2018) and *Krug v. Maricopa Cnty. Sup. Ct.*, 674 F. App'x 652, 653 (9th Cir. 2017)) ("[T]he Maricopa County Superior Court is a non-jural entity; thus, it cannot be sued."). Thus, DES and the Superior Court are dismissed from this action with prejudice.

With DES and the Superior Court dismissed, Plaintiff's Motion need only be analyzed with respect to the State. The parties do not dispute that the State failed to file an answer or otherwise respond to Plaintiff's Complaint, subjecting the State to an entry of default and default judgment thereafter. The State did not appear in this action until November 10, 2022, when it filed a Response opposing Plaintiff's Motion. (Doc. 56). That said, the Court denies Plaintiff's Motion to the extent it seeks default judgment because the Clerk has not yet made an entry of default against the State. *See* Fed. R. Civ. P. 55(a)–(b) (describing two-step process of "Entering a Default" and "Entering a Default Judgment"). Moreover, even if default *had* been entered against the State, default judgment would still not be appropriate given Plaintiff's failure to address the *Eitel* factors in his Motion. (*See* Doc. 69 at 2 (denying without prejudice Plaintiff's initial Motion for Default Judgment against Defendant Lori Bradley for failing to address *Eitel* factors)).

To the extent Plaintiff's Motion seeks an entry of default, the State responds by arguing that it was not properly served in this case and that therefore a default cannot be entered against it. (Doc. 56 at 1). The State is correct that a default cannot be entered against a defendant unless that defendant was properly served. *See, e.g., Joe Hand Promotions, Inc. v. Talayarathe*, No. 11–2554–SC, 2012 WL 1815622, at *2 (N.D. Cal. May 17, 2012)

(quotations and citation omitted) ("Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default."). Thus, the first question is whether Plaintiff properly served the State.

Plaintiff asserts that he served the State with process two separate times. First, Plaintiff contends that service of process was executed on the State on September 9, 2022, when the Office of the Attorney General received a copy of the summons and complaint via "Registered Mail." (Doc. 30 at 2). As proof of this service, Plaintiff filed a mailing return receipt. (Doc. 30-1 at 1). Although the receipt is not signed and does not indicate *who* at the Office of the Attorney General received the service, it has a stamp in the "Complete this Section on Delivery" section indicating that it was "received" on September 9, 2022. (*Id.*). On October 6, 2022, the State's counsel, Connie Gould, indicated the following in a footnote included in Defendant Tracey Westerhausen's Motion to Dismiss:

> The State has not been served with the Summons and Complaint and has not appeared in this action. Plaintiff attempted service on the State and the Maricopa Superior Court by registered mail which is not authorized by Rule 4.

(Doc. 37 at 2, n.1). Although Plaintiff disagreed with Ms. Gould's assertion that service via registered mail was unauthorized, Plaintiff attempted to serve the State a second time, this time via process server. (Doc. 55 at 2). As proof of this second attempt at service, Plaintiff attaches a "Certificate of Process" to his Affidavit. (Doc. 55 at 5). The Certificate indicates that, on October 11, 2022, an Associate Attorney at the Office of the Governor—who was apparently authorized to receive service on behalf of the Governor—was personally served with the summons and complaint. (*Id.*). The Certificate is signed by a registered process server. (*Id.*).

The question is whether either of Plaintiff's attempts at service—via registered mail to the Attorney General *or* via process server to the Governor—were proper under the relevant rules. Under Rule 4(j), "[a] state . . . that is subject to suit must be served by:

> (A) delivering a copy of the summons and of the complaint to its chief executive officer; *or*

4

> (B) serving a copy of [the summons and of the complaint] in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2)(A)–(B) (emphasis added). With respect to service under Rule 4(j)(2)(A), courts have interpreted "delivering" to *exclude* service by mail. *See Reyes v. Fircrest Sch.*, No. C11–0778JLR, 2012 WL 3144915, at *3 (W.D. Wash. Aug. 1, 2012) (noting that "Rule 4(j)(2)(A) does not provide for service by mail"); *Yates v. Baldwin*, 633 F.3d 669, 672 (8th Cir. 2011) (noting that certified mail does not constitute "delivering" under Rule 4); *Paul v. Didizian*, 292 F.R.D. 151, 155 (D.D.C. 2013) ("Plaintiff's attempt to mail a copy of the complaint . . . is also insufficient to meet the requirements of [Rule] 4(j)(2)(A), which requires the copy to be 'delivered,' and not mailed."). Therefore, Plaintiff's *first* attempt at service—serving the Attorney General via registered mail—was insufficient to satisfy Rule 4(j)(2)(A). However, Plaintiff's *second* attempt at service—personally serving the Governor via registered process server—may be sufficient so long as the Governor may be considered the "chief executive officer" of the State. Defendants argue that the Governor is *not* the chief executive officer:

> [T]he Governor is not the "Chief Executive Officer" of the State under Arizona law or Rule 4(j)(2)(A). The Governor's powers and duties are set forth in Article 5 of the Arizona Constitution and A.R.S. §§ 41-101 to 41-115. None of these provisions bestow upon the Governor the title of "Chief Executive Officer."

(Doc. 56 at 3). The Court is unpersuaded by Defendants' argument. The fact that the cited constitutional and statutory provisions do not "bestow" the title on the Governor does not necessarily preclude the Governor from being recognized as Arizona's chief executive officer. This principle was explicitly recognized by the Arizona Supreme Court in *Falcon*. *See Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527–28 (2006). In that case, the question was whether a county's board of supervisors was the "chief executive officer" of the county for purposes of Arizona Rule of Civil Procedure 4.1(i). *Id.* The question arose from the fact that state statutes specifically denominated the mayor as the chief executive

officer of municipal corporations such as cities and towns, but that the statutes failed to specifically identify the chief executive officer of other governmental subdivisions, such as counties and school boards. *Id.* at 527. Ultimately, the Supreme Court held that the board of supervisors *was* the county's chief executive officer, despite the lack of statutory language providing as such. *Id.* at 528. This holding directly undermines Defendants' argument that the Governor is not the "chief executive officer" of the State merely because the constitution and statutory provisions do not bestow that title.

In *Falcon*, the Supreme Court defined the term "chief executive officer" as "the individual or entity that controls, supervises, and has the ultimate responsibility for ensuring the proper function of a governmental entity." *Id.* at 527. This definition aligns with the powers and duties bestowed on the Governor in Article 5 of the Arizona Constitution and pursuant to A.R.S. § 41-101. For example, Article 5 states that the Governor "shall transact all executive business with the officers of the government" and "take care that the laws be faithfully executed." ARIZ. CONST. art. 5, § 4. Likewise, § 41-101 provides that the Governor "[s]hall supervise the official conduct of all executive and ministerial officers" and "see that all offices are filled and the duties performed." A.R.S. § 41-101(A)(1)–(2). The Governor also has the power to "appoint all officers of this state not made elective." *Id.* § 41-101(A)(3). Given these duties, it could be reasonably argued that the Governor has a level of "control, supervision, and ultimate responsibility for ensuring the proper functions" of the State and that he is therefore the State's "chief executive officer." That said, "the State" as a governmental entity is comprised of more than just the executive branch; it also encompasses the judicial and legislative branches. The Governor, of course, does not have explicit control or supervision over these branches, nor any direct responsibility for ensuring their proper function. In this regard, the Governor may *not* be the "chief executive officer" of the State because his duties and powers are limited to the executive branch.

The parties' arguments on this issue are limited. The parties do not cite to—and this Court is itself unaware of—any caselaw or other legal authority that directly addresses the

6

question of who, if any person, holds the title of chief executive officer of the State. Given this absence of meaningful argument and legal support, the Court is reluctant to definitively answer this potentially complicated question of constitutional and statutory interpretation. The Court concludes by finding only that it is unpersuaded by Defendants' argument, and that Plaintiff's Motion can be ruled on without wading these waters any deeper. That said, it is Plaintiff's burden to establish the validity of service. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Once service is challenged, plaintiffs bear the burden of establishing the service was valid under Rule 4."). Here, Plaintiff has failed to meet his burden of establishing that he properly served the State pursuant to Rule 4(j)(2)(A) by personally serving the Governor via registered process server.

Thus, the question is whether Plaintiff properly served the State under Rule 4(j)(2)(B), which provides that service may be executed "in the manner prescribed by that state's law." Fed. R. Civ. P. 4(j)(2)(B). Under Arizona law, service on the State is executed by "delivering a copy of the summons and the pleadings" to the Attorney General. Ariz. R. Civ. P. 4.1(h)(1). Therefore, Plaintiff's second attempt at service—*i.e.*, personally serving *the Governor* via registered process server—can be entirely ignored for purposes of Rule 4(j)(2)(B) because the attempt was not directed at the Attorney General. Plaintiff's first attempt at service—which consisted of serving the Attorney General via registered mail—was at least directed to the correct individual. However, "under Arizona law, service within Arizona by certified mail is proper only if the normal means of service are 'impracticable' and the court issues an 'order that service may be accomplished in another manner.'" *Higgins v. Higgins*, No. CV-22-00283-PHX-JJT, 2023 WL 2371851, at *3 (D. Ariz. Mar. 6, 2023) (citing Ariz. R. Civ. P. 4.1(k)). Here, there was no indication that the normal means of service were impracticable, and the Court did not issue any order permitting service by other means.[4] Thus, Plaintiff's first attempt at serving the State—*i.e.*,

---

[4] Even if normal means of service was impracticable and even if the Court had issued the necessary order permitting service by other means, there is a question as to whether Plaintiff's proof of service is sufficient. Although Plaintiff complied with Rule

serving the Attorney General via registered mail—was insufficient under state law and therefore under Rule 4(j)(2)(B). The Court finds that Plaintiff failed to properly serve the State in this matter and that Plaintiff's request for an entry of default must be denied.

As a final note, the Court recognizes that Plaintiff's attempts at serving the State in this case came close to complying with the relevant rules, as demonstrated by the rather extensive nature of this Order's service analysis. Thus, the Court finds it appropriate to add that Plaintiff's Motion would be denied *even assuming* he properly served the State. The Court finds that an entry of default against the State would be inappropriate and would serve little purpose. First, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quotations and citations omitted). Although the State did not initially appear in this action, it has done so now, and the Court finds that Plaintiff's claims against the State should be decided on their merits.

Second, even if default were entered, good cause would exist to vacate that entry of default pursuant to Rule 55(c). Rule 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists, courts in the Ninth Circuit consider the three factors[5]: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable

---

4(l)(1) by filing an Affidavit to prove service, the attached mailing return receipt was not signed. (*See* Doc. 30-1 at 1). Although it could be argued that the stamp on the receipt—stating "RECEIVED SEP 9, 2022 AZ ATTORNEY [sic] PHOENIX MAIL [sic] PALM BUILDING"—constitutes a "signature," the stamp does not indicate *who* at the Attorney General's Office accepted the service, leaving the Court uncertain as to whether it was accepted by a person authorized to accept service on behalf of the Attorney General. (*Id.*).

[5] "Courts 'consistently' refer to these factors as the '*Falk* factors.'" *Echols v. SafeRent Sols. LLC*, No. CV-22-00788-PHX-DWL, 2022 WL 4970312, at *2 n.2 (D. Ariz. Oct. 4, 2022) (citing *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011)).

conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also Apache Nitrogen Prods., Inc. v. Harbor Ins. Co.*, 145 F.R.D. 674, 681 (D. Ariz. 1993) (citations omitted) (alternatively stating third factor as "whether good cause exists for the party's default"). "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Mesle*, 615 F.3d at 1091 (citation omitted).

Here, all three factors would weigh in favor of setting aside an entry of default if it were entered. First, there is no evidence that Plaintiff would be prejudiced if an entry of default were set aside. This case remains in its early stages and Plaintiff may still obtain relief on his claims against the State based on their merits. Second, Defendants provide specific facts and law showing that they have meritorious defenses in this case. (*See* Doc. 56 at 7–8); *see also Mesle*, 615 F.3d at 1094 ("All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense."). Finally, there is no evidence that the State acted with bad faith in failing to answer or otherwise respond to Plaintiff's complaint. *See Mesle*, 615 F.3d at 1092 (quotations and citation omitted) (explaining that a defendant's conduct is culpable only if it *intentionally* failed to answer *with bad faith*, "such as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process"). The State did not appear in this action because it believed it was not properly served. That belief was at least reasonable—and certainly not based in any sort of bad faith—as demonstrated by the above discussion regarding the sufficiency of Plaintiff's attempts at service.

### III.   CONCLUSION

In sum, the Court denies Plaintiff's Motion (Doc. 54). Defendants DES and Superior Court are dismissed entirely. The Court will not direct the Clerk to make an entry of default against the State and Plaintiff is not entitled to default judgment against the State.

///

///

9

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 54) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Arizona Department of Economic Security and Defendant Superior Court of Arizona are **dismissed** from this action entirely, **with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff shall execute proper service of the summons and of the complaint on the State of Arizona in accordance with this order and in a manner that fully complies with the relevant provisions of the state and federal rules of civil procedure by **no later than March 31, 2023**. Plaintiff shall file notice and proof of service with the Court. The State of Arizona shall then answer or otherwise respond to Plaintiff's Complaint within the appropriate time allotted by the Rules.

Dated this 16th day of March, 2023.

Honorable Steven P. Logan
United States District Judge